IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICTOR ALVARADO DELEON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:02-CV-1097-K |
| | § | |
| CITY OF DALLAS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant City of Dallas' Motion for Summary Judgment on Plaintiff's Title VI Claim filed May 22, 2008, and Defendant Mark De La Paz's Motion for Summary Judgment, filed May 23, 2008. After review and consideration of the motions, response, replies, summary judgment evidence, and the applicable law, the court **grants** the City of Dallas' Motion for Summary Judgment. De La Paz's Motion for Summary Judgment is **granted in part**, and **denied in part**.

**I.    Factual and Procedural Background**

This case arises from Plaintiff Victor Alvarado DeLeon's ("DeLeon") arrest on April 19, 2001. According to DeLeon, he and a friend traveled to a local mechanic's shop that day to view repairs being made to his brother-in-law's vehicle. After discussing the repairs with the mechanic, DeLeon and his friend began removing items from the vehicle. Defendant Mark De La Paz ("De La Paz") allegedly observed a drug transaction

1

between DeLeon and a confidential informant at the shop. As they were preparing to leave, several police cars arrived and all persons on the property (including DeLeon) were detained and searched by Dallas Police Department ("DPD") officers.

DeLeon denies that he spoke to or interacted with anyone at the scene other than the mechanic, and states that he had approximately $100 on his person. According to De La Paz, he saw DeLeon take a "clear baggie" from his (DeLeon's) pant pocket and give the clear baggie to the informant in exchange for $2,500. Following the search, DeLeon was arrested for allegedly selling four ounces of cocaine for $2,500 to a confidential informant. DeLeon contends that he had nothing but his wallet in his pockets at the time of his arrest.

The baggie that was seized at the time of DeLeon's arrest was subsequently tested for fingerprints and content at the request of DeLeon's counsel. On August 13, 2001, the lab results showed that DeLeon's fingerprints were not on the package and that the cocaine found in the package was "not subject to quantitation." The lab report also referenced a "green plastic wrapper" around the seized substance, contradicting De La Paz's description of a clear baggie. Additionally, an alleged videotape of the drug transaction was never produced.

After his arrest, Plaintiff spent about three days in jail and then was expelled to Mexico by the Immigration and Naturalization Service. He later re-entered the United States and was re-arrested (on the earlier warrant) on or about June 11, 2001. He then

2

spent about three months in jail. The charges against DeLeon were ultimately dropped on September 10, 2001, after the confidential informant failed to appear for trial. DeLeon alleges that De La Paz falsely reported that he was involved in the alleged April 19, 2001 drug transaction when he actually was not, which caused a warrant to be issued for his arrest.

DeLeon sued De La Paz, the City of Dallas (the "City"), and DPD officers David Larsen ("Larsen") and Michael Mata ("Mata") in April 2002. Against the City, DeLeon asserted federal constitutional claims under 42 U.S.C. §§ 1981, 1983 and 2000d, as well as state law claims pursuant to the Texas Tort Claims Act and Texas common law. Prior to trial, the court determined that DeLeon's state claims against the City were barred by the City's sovereign immunity.

With the exception of the non-jury Title VI claim (42 U.S.C. § 2000d), DeLeon's federal claims against the City were tried to a jury in September 2005. Although the jury found that De La Paz had arrested DeLeon without probable cause to do so, the jury found that the City's policymaker had not adopted a custom of failing to follow standard DPD operating procedures which led to the arrest of DeLeon, and that the City's policymaker had not adopted a custom that had a discriminatory effect and that was motivated by a discriminatory purpose. The jury therefore returned a verdict against DeLeon and in favor of the City on all of DeLeon's federal claims, except the Title VI claim, which was not tried at that time. The City now moves for summary judgment on

DeLeon's Title VI claim.

DeLeon's claims against Larsen and Mata were previously dismissed by this court. Shortly before the trial of DeLeon's claims against the City, DeLeon amended his pleadings. In response De La Paz raised a qualified immunity defense to DeLeon's federal claims against him. This court denied De La Paz's request for qualified immunity, a decision that De La Paz appealed on an interlocutory basis.

DeLeon's claims against the City were tried while De La Paz's appeal was pending. In November 2006, the United States Court of Appeals for the Fifth Circuit affirmed in part, and reversed in part this court's order denying qualified immunity to De La Paz. Specifically, the appellate court determined that this court properly denied qualified immunity on DeLeon's federal false arrest claim, but that qualified immunity was warranted on his claim of an equal protection violation. Following this ruling, the court will dismiss the equal protection claim, but DeLeon's federal false arrest claim and his state law claims of defamation and libel, intentional infliction of emotional distress, malicious prosecution, and abuse of process remain pending against De La Paz at this time. De La Paz now moves for summary judgment on all of these remaining claims.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex*

4

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54.

Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### III. The City's Motion for Summary Judgment

As the court has noted above, DeLeon's federal claim under Title VI remains unresolved. The City contends that it is entitled to judgment as a matter of law on this claim.

#### A. Applicable Law for Title VI Claim

Title VI provides that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

5

42 U.S.C. § 2000d. Private individuals may bring claims under Title VI for both injunctive relief and damages. *Alexander v. Sandoval,* 532 U.S. 275, 279 (2001); *Hurst v. Tx. Dept. of Assistive and Rehabilitative Svcs.,* 482 F.3d 809, 812 (5th Cir.), *cert. denied,* 128 S.Ct. 490 (2007). To prevail on a claim for relief under Title VI, a private litigant must prove 1) that the defendant engaged in intentional discrimination based on race, color, or national origin; and 2) the defendant received federal financial assistance. *Alexander,* 532 U.S. at 280; *Guardians Assn. v. Civ. Svc. Commn. of New York City,* 463 U.S. 582, 611 (1983); *Waris v. Harris County, Tx.,* 2007 WL 4377828, *8 (S.D. Tex. 2007). Intentional discrimination encompasses practices by which the actor intended to treat similarly situated persons differently solely on the basis of national origin, color, or race. *Canutillo Ind. Sch. Dist. v. Leija,* 101 F.3d 393, 397 (5th Cir. 1996), *cert. denied,* 520 U.S. 1265 (1997); *Waris,* 2007 WL 4377828 at *8.

Title VI claims are reviewed using the same burden-shifting analysis applicable to Title VII claims. *Bisong v. Univ. of Houston,* 493 F. Supp.2d 896, 904-05 (S.D. Tex. 2007 *Washington v. Jackson State Univ.,* 532 F. Supp.2d 804, 810 (S.D. Miss. 2006); *Williams v. Galveston Indep. Sch. Dist.,* 256 F. Supp.2d 668, 671 (S.D. Tex.), *aff'd,* 78 Fed. Appx. 946 (5th Cir. 2003), *cert. denied,* 541 U.S. 959 (2004). This analysis, which is intended to determine whether intentional discrimination is present, was originally articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973).

Under the *McDonnell Douglas* test, a plaintiff must demonstrate a *prima facie* case

of discrimination, and the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 352 (5th Cir. 2005). If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either 1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or 2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *Id.; Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003).

    **B.**    **Analysis**

On summary judgment, the City first argues that DeLeon cannot establish a *prima facie* case of discrimination. The three prongs of DeLeon's *prima facie* case are: that he belongs to a protected class, that he suffered an adverse action, and that he was treated less favorably than other similarly-situated individuals outside of his protected class. Although it is unclear whether DeLeon is claiming protected status based upon race, national origin or ethnicity, as he has used all of these terms loosely and interchangeably throughout the long history of this litigation, the City has not disputed DeLeon's membership in a protected category of persons. DeLeon's nationality is Mexican, so he may at least claim protected status based upon national origin. It is also undisputed that DeLeon experienced an adverse action because, as the jury found, he was falsely arrested

7

in April 2001.

Although DeLeon has met the first two elements of his *prima facie* case of discrimination, the City argues that he cannot meet the last element, because he has not set forth competent summary judgment evidence suggesting that other similarly situated persons who were not members of the protected class were not falsely arrested or otherwise received more favorable treatment. The court agrees. DeLeon's discovery responses state that there are no "true comparators" to DeLeon, asserting in a conclusory fashion that members of his protected group were "singled out." This type of unsupported allegation will not permit DeLeon to avoid summary judgment. *See Turner v. Baylor Richardson Medical Center,* 476 F.3d 337, 345-46 (5th Cir. 2007) (conclusory allegations are not competent summary judgment proof); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992) (same). Moreover, in his summary judgment response DeLeon (apparently shifting his protected status to his race) states that no "statistically significant" number of white or black persons were arrested in circumstances similar to his, thus suggesting (as the City points out in its reply) that there were at least *some* white and black individuals who also were falsely arrested in the course of the DPD's "fake drug" scandal. This admission further defeats DeLeon's attempt to establish this crucial element of his *prima facie* case.

Even if DeLeon had successfully set forth a *prima facie* case of discrimination (which he has not done), the court finds that the City is able to show a legitimate, non-

discriminatory reason for its actions. Specifically, the City may rely on the jury's September 2005 finding that the City's policymaker did not have a custom or policy that had a discriminatory effect and that was motivated by a discriminatory purpose. Additionally, the City notes that on summary judgment DeLeon has adduced no evidence of deliberate indifference by the City's policymaker with regard to the actions of De La Paz or any of the other facts related to his arrest. Finally, DeLeon has not raised a material issue of fact as to the ultimate issue of discrimination, either through pretext or mixed motive. For all of the above reasons, the City is entitled to judgment as a matter of law on DeLeon's Title VI claim.

    **C.    Other Matters**

In his response, DeLeon also argues that by allegedly violating Title VI, the City waived its sovereign immunity as to any state law tort claims he had previously asserted. As the City notes, this court has already dismissed DeLeon's state law tort claims against the City. Furthermore, the court has now dismissed herein DeLeon's Title VI claim, so to the extent that Title VI liability was a basis for any supposed waiver of sovereign immunity by the City, DeLeon's state claims against the city fail for this additional reason.

**IV.    De La Paz's Motion for Summary Judgment**

De La Paz has also moved for summary judgment, seeking dismissal of all of DeLeon's claims against him.

A. **Federal Claims**

DeLeon's remaining federal claims against De La Paz include claims for false arrest and equal protection. Also, although it is unclear whether DeLeon actually intended to plead a Title VI claim against De La Paz individually, the court liberally construes DeLeon's pleadings to include such a claim.

1. **Equal Protection**

The Fifth Circuit has granted qualified immunity to De La Paz on DeLeon's equal protection claim; therefore, this claim is hereby dismissed with prejudice.

2. **Title VI**

The proper defendant in a Title VI case is an entity receiving federal financial assistance. *Washington,* 532 F. Supp.2d at 811; *see also Shotz v. City of Plantation, Florida,* 344 F.3d 1161, 1171 (llth Cir. 2003) (individuals not liable under Title VI); *Buchanan v. City of Bolivar,* 99 F.3d 1352, 1356 (6th Cir. 1996) (Title VI claims against individuals dismissed because they were not entities receiving federal financial assistance). Because De La Paz is an individual, not an entity that receives federal financial assistance, he cannot be sued in his individual capacity under Title VI. To the extent that DeLeon has asserted a Title VI claim against De La Paz, the court will enter summary judgment for De La Paz on this claim.

3. **False Arrest**

De La Paz also moves for summary judgment on DeLeon's federal false arrest

claim. The court denied qualified immunity to De La Paz on this claim, and its denial of immunity was affirmed by the Fifth Circuit. Because De La Paz's appeal to the Fifth Circuit regarding qualified immunity was pending at the time of the City's trial, this claim remains pending against De La Paz. With respect to this claim, the court finds that there are genuine issues of material fact present that preclude the entry of summary judgment, and the court therefore denies summary judgment on this claim.

### B. State Law Claims

DeLeon has also pleaded certain claims against De La Paz under Texas law: defamation and libel, malicious prosecution/abuse of process, and intentional infliction of emotional distress. In defense, De La Paz states that these claims should be dismissed because these state tort claims are barred by the Texas Civil Practice & Remedies Code section 101.106(e) and (f). The court notes that Tex. Civ. Prac. & Rem. Code § 101.106(e) and (f) were effective on September 1, 2003. Thus, because DeLeon's claim arose in 2001, and he filed his claims in 2002, the court looks to the earlier version of section 101.106 to evaluate its applicability to DeLeon's claims. Prior to 2003, section 101.106 stated that:

> [a] judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

Tex. Civ. Prac. & Rem. Code § 101.106 (West 2002).

DeLeon also pleaded state law intentional tort claims against the City, which

raised the defense of sovereign immunity under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code § 101.001, *et seq.* The City argued that DeLeon's intentional tort claims did not fall within the limited waiver of sovereign immunity found in the TTCA (*see* Tex. Civ. Prac. & Rem. Code § 101.021), and that they were expressly barred by Tex. Civ. Prac. & Rem. Code § 101.057(2), which exempts intentional tort claims from the City's limited waiver of sovereign immunity.

The court agreed with the City's interpretation of these statutory provisions to DeLeon's tort claims, and dismissed these claims prior to trial. When this case has been fully adjudicated in this court, the court's interlocutory order will become final and the court will enter judgment in favor of the City on DeLeon's intentional tort claims. Section 101.106 forecloses any claim against an employee subsequent to, or concurrent with, the rendition of a judgment as to claims against the governmental entity. *Thomas v. Oldham,* 895 S.W.2d 352, 355 (Tex. 1995); *Welch v. Milton,* 185 S.W.3d 586, 594 (Tex. App. – Dallas 2006, rev. denied). "The immunity conveyed to employees by section 101.106 is triggered by *any* judgment in an action against a governmental unit, including a judgment in favor of the governmental unit." *Welch,* 185 S.W.3d at 594, *quoting Dallas Co. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343-44 (Tex. 1998) (emphasis in original). Therefore, the court's dismissal of the intentional tort claims against the City operates as a bar to DeLeon's state tort claims against De La Paz. De La Paz is entitled to summary judgment on these claims.

V.   Conclusion

For the foregoing reasons, the City's Motion for Summary Judgment on DeLeon's Title VI claim is **granted,** and this claim is **dismissed with prejudice.** De La Paz's Motion for Summary Judgment is **granted in part**, and **denied in part.** The motion is **granted** as to DeLeon's federal claim against De La Paz under Title VI, and his state tort claims. These claims are **dismissed with prejudice.** Because De La Paz has been granted qualified immunity as to DeLeon's federal equal protection claim, this claim is also **dismissed with prejudice.** Because the court finds there are material issues of fact remaining with respect to DeLeon's federal false arrest claim against De La Paz, the court **denies** De La Paz's request for summary judgment on this claim. Judgment will be entered by separate document.

**SO ORDERED.**

Signed July 25th, 2008.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE